# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REVEREND PATRICK J. MAHONEY,<br>CHRISTIAN DEFENSE COALITION,<br><br>Plaintiffs,<br><br>v.<br><br>WILMA LEWIS,<br>DALE E. BOSLEY, MARSHAL   OF THE<br>SUPREME COURT,<br>UNITED STATES SUPREME COURT<br>POLICE DEPARTMENT,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) Civ. No. 00-1325 (TFH)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**FILED**

JUN 2 3 2000

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM OPINION

Pending before the Court are plaintiffs' motion for a preliminary injunction and defendants' motion to dismiss or in the alternative for summary judgment.[1]  Based on the briefs and exhibits submitted by the parties, the testimony and arguments presented at the June 8 and June 20, 2000 hearings, and the entire record herein, the Court finds that plaintiffs have not demonstrated that they are entitled to a preliminary injunction.  Furthermore, defendants have shown that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law.  Consequently, the Court will deny plaintiffs' motion for a preliminary injunction and grant defendants' motion for summary judgment.

---

[1]  In accordance with Federal Rule of Civil Procedure 12(c), the Court will treat defendants' motion as a motion for summary judgment. Fed. R. Civ. P. 12(c) provides that "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." See also Neal v. Kelly, 963 F.2d 453, 455 (D.C. Cir. 1992).

AO 72A
(Rev.8/82)

# I. FACTUAL BACKGROUND

Plaintiffs have brought this action to challenge the constitutionality of Regulation Six, which was enacted on April 25, 2000 by the Marshal of the Supreme Court, Dale E. Bosley ("Marshal Bosley"), pursuant to 40 U.S.C. § 131.[2] Regulation Six states that (1) no signs shall be allowed except those made of cardboard, posterboard, or cloth; (2) supports for signs must be entirely made of wood, have dull ends, may not be hollow, may not exceed three-quarter inch at their largest point, and may not include protruding nails, screws, or bolt-type fastening devices; (3) hand-carried signs are allowed regardless of size; (4) signs that are not hand-carried are allowed only if they are no larger than four feet in length, four feet in width, and one-quarter inch in thickness and may not be elevated higher than six feet; they may not be used so as to form an enclosure of two or more sides; they must be attended by an individual within three feet of the sign at all times; and they may not be arranged in such a manner as to create a single sign that exceeds the four feet by four feet by one-quarter inch size limitations; and (5) no individual may have more than two non-hand-carried signs at any one time. See Reg. Six (Pl's Ex. A). The Regulation further provides that "[n]otwithstanding the above, no person shall carry or place any sign in such a manner as to impede pedestrian traffic, access to and from the Supreme Court Plaza or Building, or to cause any safety or security hazard to any person." Id. The stated

---

[2]     Section 131(a) authorizes the Marshal to

> prescribe such regulations, approved by the Chief Justice of the United States, as may be deemed necessary for the adequate protection of the Supreme Court Building and grounds and of persons and property therein, and for the maintenance of suitable order and decorum within the Supreme Court Building and grounds.

40 U.S.C. § 131(a).

AO 72A
(Rev.8/82)

purposes of this Regulation are "to protect the Supreme Court Building and grounds and persons and property thereon, and to maintain suitable order and decorum within the Supreme Court Building and grounds." Any person failing to comply with Regulation Six is subject to a fine and/or imprisonment.

Plaintiff Reverend Patrick J. Mahoney ("Reverend Mahoney") was arrested pursuant to an alleged violation of this Regulation on April 25, 2000. The charges have since been dropped, and the cases against the Superior Court of the District of Columbia, the Government of the District of Columbia, and Mayor Anthony Williams have been dismissed.[3] Reverend Mahoney filed a motion for temporary restraining order and for preliminary injunction in this Court on June 8, 2000, alleging that Regulation Six is an unconstitutional infringement of his First Amendment liberties and that he will be irreparably harmed by this Regulation because it interferes with his ability to participate in his planned prayer vigil on the grounds and sidewalks of the Supreme Court. Specifically, Reverend Mahoney and numerous other individuals, including members of the Christian Defense Coalition[4], wish to protest and call attention to the

_____

[3]     At the June 20, 2000 hearing, plaintiffs orally moved to dismiss the Superior Court of the District of Columbia, the Government of the District of Columbia and Mayor Anthony Williams. Defendants, through counsel, consented to the dismissal of these parties, and the Court dismissed them orally at that time. A written order dismissing these parties was subsequently issued.

[4]     Defendants argue in footnote 2 of their opposition that the Christian Defense Coalition ("Coalition") lacks standing to bring these claims. In order to demonstrate "associational" or "representational" standing, the Coalition must demonstrate "that '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" National Taxpayers Union, Inc. v. United States, 68 F.3d 1428, 1435 (D.C. Cir. 1995), quoting Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977). Defendants argue that the Coalition lacks standing because it has no members; to

3

issue of partial birth abortion and the case of <u>Stenberg v. Carhart</u>, Supreme Court Docket No. 99-380, a case now pending before the Supreme Court and argued on April 25, 2000.

On June 8, 2000, this Court denied plaintiffs' motion for a temporary restraining order because at that point plaintiffs had not shown a substantial likelihood of success on the merits and there was no evidence that plaintiffs would be irreparably harmed since they could continue to protest on the Supreme Court grounds as long as their signs conformed to the Regulation's requirements. On June 14, 2000, as part of their opposition to plaintiffs' motion for preliminary injunction, defendants filed a motion to dismiss or in the alternative for summary judgment.

On June 16, 2000, plaintiffs filed a Notice of Intention to Offer Live Testimony at the Preliminary Injunction Hearing. In response, defendants moved to quash plaintiffs' subpoenas of Chief Justice William H. Rehnquist, Corporal K.J. Willis and Sergeant Johnson of the Supreme Court Police Department, and Marshal Bosley. On June 19, 2000, this Court issued an order granting in part and denying in part defendants' motion to quash plaintiffs' subpoenas. The Court granted the motion to quash with respect to the Chief Justice and the two Supreme Court police officers, but denied the motion to quash with respect to Marshal Bosley.

On June 20, 2000, the Court heard oral argument on plaintiffs' motion for a preliminary injunction and defendants' motion for summary judgment. Marshal Bosley was the sole witness at this hearing.

---

support this proposition, defendants cite plaintiffs' Complaint which refers to the Coalition as "an unincorporated association of Christians involved in public activism." Complaint ¶ 17. This argument lacks merit. As long as the Coalition involves a group of people with a united purpose, it can be considered an organization with members for purposes of standing.

AO 72A
(Rev 8/82)

## II. APPLICABLE LEGAL STANDARDS

The standard for preliminary injunctions is dictated by Fed. R. Civ. P. 65(a). Under that Rule and the applicable caselaw, the Court may grant a preliminary injunction if the moving party demonstrates that: (1) the movant is likely to succeed on the merits of their claims; (2) the moving party will suffer irreparable harm if relief is not granted; (3) other parties will not suffer substantial harm if relief is granted; and (4) the public interest will be advanced by the provision of preliminary relief. Washington Metropolitan Area Transit Comm. v. Holiday Tours, Inc., 559 F.2d 841, 842-43 (D.C. Cir. 1977).

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). There is a genuine issue of fact only if the evidence before the Court is such that a reasonable jury could return a verdict in favor of the non-moving party; a fact is material only if it might affect the outcome of the suit under applicable law. Id. at 248.

## III. DISCUSSION

### A.  Summary Judgment

Plaintiffs' complaint alleges six causes of action: (1) violation of the First Amendment; (2) violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb; (3) violation of due process; (4) violation of the Equal Protection Clause of the Fifth Amendment; (5) ultra vires rulemaking; and (6) violation of the separation of powers doctrine.

5

1. First Amendment

As a general rule, peaceful picketing and protesting are expressive activities involving "speech" protected by the First Amendment. United States, et al. v. Grace, et al., 461 U.S. 171 (1983). "Public places," such as streets sidewalks, and parks, historically associated with exercise of expressive activities, are considered, without more, to be "public forums." Id. The sidewalks forming the perimeter of the Supreme Court grounds have been held to be "indistinguishable from any other sidewalks in Washington" and thus are treated no differently and are public forums for First Amendment purposes. Id. at 171-2 and 180.

However, it is well-established that the right to express ideas is not wholly unfettered. The "First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." Heffron v. International Society for Krishna Consciousness, Inc., 452 U.S. 640, 647 (1981). The government may adopt reasonable "time, place, and manner" restrictions on the exercise of free speech, so long as the restrictions are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. White House Vigil for the ERA Committee, et al. v. Clark, et al., 746 F.2d 1518, 1527 (D.C. Cir. 1984).

In determining the validity of time, place, and manner regulations, the Court must undertake a three-part analysis: (1) the regulation must be content-neutral, (2) the regulation must be narrowly tailored to serve significant governmental interests, and (3) the regulation must leave open ample alternative means of communication. Ward v. Rock Against Racism, 491 U.S. 781, 782 (1989).

*a. Content-neutrality*

The principal inquiry in determining content-neutrality, in speech cases generally and in

6

time, place, or manner cases, in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. <u>Ward</u>, 491 U.S. at 791.   The government's purpose is the controlling consideration. <u>Id.</u> "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages, but not others." <u>Id.</u> Government regulation of expressive activity is content-neutral so long as it is justified without reference to the content of the regulated speech. <u>Id.</u>

On its face, Regulation Six is clearly content-neutral; it focuses exclusively on the composition, size, number, and attendance of signs carrying the message and does not purport to distinguish among the messages being portrayed.  Nor does this Regulation ban speech entirely. Anyone can protest or picket outside the Supreme Court as long as their signs conform to the requirements of Regulation Six.   The stated reasons for issuance of this Regulation are also content-neutral.  According to Marshal Bosley's testimony, he enacted Regulation Six because he determined that excessively large signs erected on the Supreme Court sidewalks threaten the safety and security of Court personnel, visitors, demonstrators and pedestrians using the sidewalk; may impede access and the appearance of access to the Court; obstruct the view of passersby and visitors to the Court; and are inimical to the maintenance of suitable order and decorum within the grounds of the Supreme Court. <u>See</u> Tr. 6/20/00; <u>see also</u> 6/14/00 Aff. of Marshal Bosley (Def's exhibit 1 at ¶¶ 3-8).   The government's interests in the security of the Supreme Court justices, as well as the safety of the public, and in the aesthetic environment of the Supreme Court building are considered substantial interests.  The need for effective security of Supreme Court justices is comparable to the interest in presidential security recognized by the Supreme Court in <u>White House Vigil</u>. <u>See</u> 746 F.2d at 1528.  In fact, aesthetics alone is

considered a "proper focus of governmental regulation." Id. ("the government has a substantial interest in the preservation and enhancement of the human environment; aesthetics are a proper focus of governmental regulation.") Therefore, the Court recognizes the government's stated interests in this case as significant.

Although the Court recognizes that the interests in safety, security, access, and aesthetics on the Supreme Court grounds are substantial and legitimate interests, the Court was initially concerned that these stated interests were not the real reasons for the enactment of this Regulation. However, after hearing testimony from Marshal Bosley, the Court is satisfied that Regulation Six is not based upon the content or subject matter of speech. While it is true that this Regulation was promulgated on the third day of plaintiffs' protest and on the same day as oral arguments were scheduled to be heard in the Stenberg case, there is no evidence in the record from which this Court could conclude that Regulation Six is content-based. Marshal Bosley presented uncontroverted testimony that he did not see the content of these signs since he was viewing them from the back; and that he was motivated to issue this Regulation solely because he was concerned with the possible security, safety, access, and decorum threats associated with the size of these signs. See Tr 6/20/00. Marshal Bosley then explained the possible dangers implicated by large signs, including the potential use of these signs as weapons, the risks associated with people hiding behind large signs or concealing weapons behind these signs, the concerns that these signs may block the sight lines and communication of officers, and the possibility that someone could become trapped or cornered among several large signs.[5] Id.

---

[5] At the June 20, 2000 hearing, plaintiffs questioned why these security concerns were not implicated before April 25, 2000. Specifically, plaintiffs inquired as to why Regulation Six was not necessary during the annual demonstrations at the Supreme Court in honor of the anniversary of the Roe v. Wade decision. To

8

Marshal Bosley further testified that, in drafting this Regulation, he reviewed comparable existing regulations on demonstrations and expressive activity on public sidewalks, around the White House and Lafayette Park, and that at no time during his deliberations with Court staff did the content of the billboard-sized signs enter into the discussions.[6] Id.; see also Bosley Aff. ¶¶ 6-7. There is simply no evidence in the record from which the Court could conclude that Regulation Six is content-based.

     b. *Narrowly Tailored to Serve Significant Government Interests*

     As in most "time, place, and manner" cases, the decisive inquiry here concerns the requisite narrowness of the means employed by the government to advance its significant interests. Plaintiffs suggest that Regulation Six is not narrowly tailored to serve the stated governmental interests. It is well established that while the regulations must be narrowly tailored to serve substantial governmental interests, they need not be the least restrictive means of accomplishing these goals. Ward, 491 U.S. at 797 (The "less restrictive-alternative analysis . . . has never been a part of the inquiry into the validity of a time, place, and manner regulation. . . . Instead, our cases quite clearly hold that restrictions on time, place, or manner of protected

---

     support their argument, plaintiffs showed part of a film of that event and focused specifically on the large stage that had been erected on the sidewalk of the Supreme Court. However, Marshal Bosley explained that special security measures are enacted for this annual event: the front plaza is closed to the public, the Capitol and Metropolitan police are called in to assist, extra Supreme Court Police officers are on duty, and other confidential security measures are put in place. See Tr. 6/20/00. Because of these enhanced security measures, the Supreme Court Police are better equipped to deal with oversize signs and structures on that day than on other days of the year. Id.

[6]    The Marshal also testified that he was not personally aware of plaintiff Reverend Mahoney's involvement with the current administration on the issue of partial birth abortions, nor was he aware of plaintiff Mahoney's previous litigation over a similar issue in Mahoney v. Babbitt, 113 F.3d 219 (D.C. Cir. 1997).

speech are not invalid simply because there is some imaginable alternative that might be less burdensome on speech."); see also White House Vigil, 746 F.2d at 1531-2 ("The expertise of courts lies in determining whether an agency's decision is within the zone of constitutionality, not in choosing between options within that zone. A court may not require that the agency adopt the 'least restrictive alternative,' thereby substituting its judgment for that of the regulators.")

Regulation Six serves several significant and judicially recognized governmental interests. Among these interests are protecting the safety and security of Court personnel, visitors, demonstrators, and pedestrians using the sidewalk, ensuring access and the appearance of access to the Court, allowing passersby and visitors to the Court an unobstructed view of the Court building and maintaining suitable order and decorum within the grounds of the Supreme Court. It is well-established that these interests are "substantial." See, e.g., Grace, 461 U.S. at 182 (recognizing "necessity to protect persons and property [and] to maintain proper order and decorum within the Supreme Court grounds"); Members of City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 781, 807 (1984) (finding "visual assault" of signs on public property a "significant substantive evil"); Henderson v. Lujan, 964 F.2d 1179, 1184 (D.C. Cir. 1992) (noting that government "interest in maintaining a tranquil mood at the [Vietnam] Memorial Wall is similar to ones that the Supreme Court and this court have recognized as substantial."); White House Vigil, 746 F.2d at 1534 (recognizing the security dangers of large signs, the safety concerns associated with signs composed of non-rigid materials, the potential for sign supports to be used as weapons, and the validity of attendance requirements to limit the possibilities of signs being used as weapons or being used to conceal dangerous items).

Plaintiffs argue that Regulation Six is not narrowly tailored to further the government's significant interests, because plaintiffs themselves do not pose any threat to safety, security,

access, or decorum. This contention ignores the well-settled principle that "the validity of [a] regulation depends on the relation it bears to the overall problem the government seeks to correct, not on the extent to which it furthers the government's interests in an individual case." Ward, 452 U.S. at 781; see also White House Vigil, 746 F.2d 1534 n. 106 ("There is no suggestion, of course, that appellees or intervenors themselves would engage in activity that threatens the White House or its occupants . . . We are concerned instead with persons who harbor less beneficient intentions.")

Plaintiffs also contend that this Regulation is unduly burdensome because there are less restrictive means of accomplishing the government's stated interests. However, this Circuit has explicitly held that "a regulation will meet the Supreme Court's 'narrowly tailored' requirement if a substantial portion of the burden it imposes furthers the government's stated interest, even though a less intrusive alternative might also exist." American Library Ass'n v. Reno, 33 F.3d 78, 88 (D.C. Cir. 1994), cert. denied, 515 U.S. 1158 (1995). Applying this standard to Regulation Six demonstrates that it is narrowly tailored. This Regulation is clearly not the only means by which the government could have accomplished these stated objectives. It may not even be the most effective means of accomplishing the stated goals. The Court, however, is not at liberty to replace the defendants' judgment with its own. Ward, 491 U.S. at 800 ("So long as the means chosen are not substantially broader than necessary to achieve the government's interest . . . the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less restrictive speech alternative. The validity of [time, place, or manner] regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests or the degree to which those interests should be promoted."); see also

11

White House Vigil, 746 F.2d at 1534.  If the means selected are "narrowly tailored," that is, if they lie within the range of feasible options the government was constitutionally permitted to consider, they satisfy the elements of the time, place, and manner test.  Id.  Regulation Six certainly meets this test.

     *c.  Regulation Leaves Open Ample Alternative Channels of Communication*

     The final requirement, that the regulation leave open ample alternative channels of communication, is easily met here.  Plaintiffs may still protest on the sidewalks of the Supreme Court at the time that they prefer, with signs; the only requirement is that their signs must comply with the size, composition, number, and attendance restrictions of Regulation Six. Plaintiffs contend that these restrictions diffuse the impact of their message.  Obviously the large free-standing signs that plaintiffs want to use would attract more attention than the smaller or hand-held signs.  However, our caselaw does not recognize a constitutional right to attract attention to one's cause.  White House Vigil, 746 F.2d at 1538.  As this Circuit stated in Vietnam Veterans Against the War v. Morton, 506 F.2d 53 (D.C. Cir. 1974), "What the litigant's press agent seeks and what the public interest requires differ widely.  Although every man is entitled to make his remonstrance, no man is entitled to make such a remonstrance that it will be carried on all three television networks."  Id. at 58.  Therefore, as long as plaintiffs are still able to convey their message, which the Court finds that they are indeed able to do, the fact that they may not achieve their desired level of media and public attention as a result of the size regulations inherent in Regulation Six is insufficient to render the Regulation unconstitutional.  In this case, there are sufficient alternative channels of communication available to plaintiffs.

     Therefore, summary judgment is warranted with respect to Count I of plaintiffs' complaint, because there are no material facts in dispute and the facts demonstrate that

defendants are entitled to judgment as a matter of law.

2. Religious Freeom Restoration Act

In order to state a claim under the Religious Freedom Restoration Act (RFAA), 42 U.S.C. § 2000bb, plaintiffs have the burden of alleging facts that demonstrate that a sincerely held religious belief is at stake and that the regulation at issue substantially burdens that belief. Werner v. McCotter, 49 F.3d 1476, 1480 and n.2 (10th Cir. 1995), cert. denied, 520 U.S. 1244 (1997); see also Jackson v. District of Columbia, 89 F. Supp. 2d 48 (D.D.C. 2000). Mere conclusory allegations are insufficient to meet this burden. Id.

Here, plaintiffs allege that their religious beliefs demand that they "pursue the cause of justice for unborn children by public expression of the inalienable rights of unborn children . . . ." Complaint ¶ 20. They further allege that they have "pursued this cause" by "displaying large signs on a public sidewalk adjacent to the route of the 1997 Presidential Inaugural Parade," "wearing t-shirts expressing [their] message while touring in the public areas of the White House," "conducting prayer vigils on the public sidewalk in front of the United States Supreme Court" and "displaying large signs on the public sidewalk in front of the United States Supreme Court." Complaint at ¶¶ 20, 21-24.

In this case, although plaintiffs have adequately alleged facts that demonstrate that a sincerely held religious belief is at stake, they have failed to demonstrate how Regulation Six substantially burdens their religious beliefs. Under Regulation Six, plaintiffs are still able to conduct prayer vigils and protests on the sidewalks of the Supreme Court. The only restriction plaintiffs face is in the size, number, and attendance of non hand-carried signs and in the composition of all signs. These restrictions do not substantially impact plaintiffs' religious beliefs, since they are not prevented from expressing their views and since the Regulation is

13

narrowly tailored to serve the stated government interests.

Accordingly, judgment should be entered for defendants with respect to Count II of plaintiffs' complaint.

### 3. Due Process

Plaintiffs also claim that § 131, authorizing the issuance of Regulation Six, and the Regulation itself, are unconstitutionally vague.  Complaint ¶ 127.  "A statute or ordinance is vague either if it does not give fair warning of the proscribed conduct or if it is an unrestricted delegation of power that enables enforcement officials to act arbitrarily and with unchecked discretion."  Keeffe v. Library of Congress, 777 F.2d 1573, 1581 (D.C. Cir. 1985).

Neither the statute nor Regulation Six are in any way "vague" or "undefined."  Section 131 was implicitly approved by the Supreme Court in Grace, where it noted that Supreme Court sidewalks are "subject to reasonable time, place, and manner restrictions, either by statute or by regulations issued pursuant to 40 U.S.C. § 131."  461 U.S. at 183.  Similarly, Regulation Six is modeled after the National Park Service regulations that have been challenged numerous times and consistently upheld.[7]  See 36 C.F.R. § 7.96 (g) (5) (viii) (2000) (regulations governing signs on White House sidewalks); 36 C.F.R. § 7.96 (g) (5) (x) (b) (2000) (regulations governing signs in Lafayette Park); see White House Vigil, 746 F.2d 1518 (upholding White House sidewalk regulations); United States v. Musser, 873 F.2d 1513 (D.C. Cir. 1989) (upholding challenge to

---

[7]     Plaintiffs argue that Regulation Six is more restrictive than the White House regulations, because the White House allows signs of up to three feet by twenty feet and the White House regulations have no height limitation.  However, in some sense, Regulation Six is also less restrictive than the White House regulations because the White House forbids the use of all signs, regardless of size, in the center portion of the White House sidewalk.  See 36 C.F.R. § 7.96(g)(5)(viii).  By contrast, Regulation Six does not close off any area of the Supreme Court sidewalk to the public.  See Reg. Six.

14

Lafayette Park regulations). Moreover, it is hard to imagine how Regulation Six could be much clearer. In order to comply, signs can be made of "cardboard, posterboard, or cloth." Reg. Six at 1. Allowable supports are described in exhaustive detail. Id. at 2. There is no size limit on hand-carried signs, and signs that are not hand-carried can be "no larger than 4 feet in length, 4 feet in width, and 1/4 inch in thickness" exclusive of necessary supports. Id. at 3, 4. Non hand-carried signs cannot be elevated to exceed a height of six feet, cannot be used "to form an enclosure of two or more sides," cannot be arranged to create a single sign larger than four feet by four feet, and someone must be within three feet of each sign at all times." Id. at 4. The Court cannot find, and plaintiffs have not demonstrated, any aspect of 40 U.S.C. § 131 or of Regulation Six that does not give fair warning of the proscribed conduct or that is an unrestricted delegation of power which enables enforcement officials to act arbitrarily and with unchecked discretion. Thus, plaintiffs' due process claim cannot survive summary judgment.

### 4. Equal Protection

In order to state an equal protection claim[8], the plaintiffs must show that the government has failed to "afford similar treatment to similarly situated persons." News America Pub., Inc. v. FCC, 844 F.2d 800, 894 (D.C. Cir. 1988). Plaintiffs argue that they are being treated differently because there are size, material, attendance, and composition restrictions on their non-hand-carried signs, but there are no such restrictions governing the permanently affixed metal traffic signs in the sidewalks on the perimeter of the Supreme Court grounds. However, the Court finds that these traffic signs in the periphery of the sidewalk do not threaten the interests sought to be

---

[8]     The Equal Protection Clause appears in the Fourteenth Amendment, which applies exclusively to the states. The Supreme Court, however, has found that it is encompassed by the Due Process Clause of the Fifth Amendment and therefore is applicable to the federal government. Bolling v. Sharpe, 347 U.S. 497 (1954).

protected by the regulation and are thus not substantially similar as interpreted by the Equal Protection Clause. The traffic signs are not so large as to obstruct viewpoints of the public or officers or to make the possibility of concealing dangerous persons or items a likely threat; moreover, they are permanently anchored in the sidewalks and thus cannot easily be picked up and used as weapons. Therefore, plaintiffs' equal protection claim is without merit and summary judgment for defendants is warranted.

### 5. Ultra Vires

Plaintiffs claim that the Marshal's issuance of Regulation Six was outside his statutory authority. This argument lacks merit. The statute explicitly grants the Marshal the authority to "prescribe such regulations, approved by the Chief Justice of the United States, as may be deemed necessary for the adequate protection" of the Supreme Court Building, grounds, persons, and property on the grounds "and for the maintenance of suitable order and decorum" in the Building and on the grounds. 40 U.S.C. § 131. This statute gives the Marshal and the Chief Justice discretion to determine what is necessary for the adequate protection of these interests. As long as Regulation Six is content-neutral, narrowly drawn to advance the stated interests, and leaves open ample alternative channels of communication, it is constitutional and must be upheld. Therefore, there is no support for plaintiffs' contention that the Marshal's issuance of Regulation Six was outside his authority.[9] Since there are no material facts in dispute and since defendants are entitled to judgment as a matter of law, summary judgment is proper with regard

---

[9]     Plaintiffs allege that Regulation Six was not properly approved by the Chief Justice. However, plaintiffs offer no factual support for this assertion. Moreover, Marshal Bosley testified that he did in fact have the Chief Justice's approval before he issued Regulation Six. See Tr. 6/20/00; see also 6/14/00 Aff. of Marshal Bosley.

to plaintiffs' ultra vires claim.

### 6. Separation of Powers

The Supreme Court's decision in <u>Mistretta v. United States</u>, 488 U.S. 361 (1989),

forecloses plaintiffs' claim that 40 U.S.C. § 131 violates the separation of powers doctrine.  In

<u>Mistretta</u>, the Court rejected a claim that the Sentencing Commission violated the separation of

powers doctrine.  The Court noted that in 1977 it had rejected "as archaic" a "complete division

of authority among the three Branches of government."  488 U.S. at 380, citing <u>Nixon v.

Administrator of General Services</u>, 433 U.S. 425, 443 (1977).  The Court further explained that

"[n]one of our cases indicate that rulemaking per se is a function that may not be performed by

an entity within the Judicial Branch . . . . On the contrary, we specifically have held that

Congress, in some circumstances, may confer rulemaking authority on the Judicial Branch."  <u>Id.</u>

at 386-87, citing <u>Sibbach v. Wilson & Co.</u>, 312 U.S. 1 (1941) and <u>Wayman v. Southard</u>, 23 U.S.

(10 Wheat) 1 (1825).  Accordingly, plaintiffs' separation of powers claim must be dismissed

since there are no genuine issues of material fact and defendants are entitled to judgment as a

matter of law.

## B. Preliminary Injunction

Since the Court has already determined that defendants are entitled to judgment as a

matter of law as to each of plaintiffs' six claims, the Court need not reach the preliminary

injunction question.  However, since the standard for issuance of a preliminary injunction differs

in some respects from the standard for granting summary judgment relief, the Court will

undertake a brief analysis of the four factors considered when evaluating a plaintiff's request for

a preliminary injunction.

1. Likelihood of Success on the Merits

To determine likelihood of success on the merits, the Court looks to the standards provided by the substantive law. See Mississippi Power & Light Co. v. United Gas Pipe Line Co., 760 F.2d 618, 622 (5th Cir. 1985). Because the Court has determined that defendants are entitled to judgment as a matter of law as to all six of plaintiffs' claims, the Court has already established that plaintiffs are not likely to succeed on the merits.

2. Irreparable Harm

To meet the second criterion for preliminary relief, plaintiffs must show a substantial likelihood that irreparable harm will occur if a court does not intervene with injunctive relief. Plaintiffs argue that they have met this burden because Regulation Six restricts their ability to convey their message. While it is true that "[t]he loss of First Amendment freedoms, for even minimal periods of time [may] constitute irreparable injury," see Elrod v. Burns, 427 U.S. 347, 373 (1976), it is equally well-established that the right to express ideas, even in public forums, is not wholly unfettered. See Heffron, 452 U.S. at 647. In this case, the Court finds that the impact of Regulation Six on plaintiffs' expressive activities is not unduly burdensome. Regulation Six does not ban any particular method of speech but rather it merely limits the size, number, and attendance of non-hand-carried signs, and the composition of signs. Plaintiffs may still pray, chant, sing, picket, carry signs of any size, distribute leaflets, make speeches, and erect cardboard, posterboard, or cloth signs of up to four feet by four feet. "The content of the message they espouse is theirs and theirs alone." White House Vigil, 746 F.2d at 1528. The only impact Regulation Six has is to regulate the material of which the signs are constructed, and, if the signs are not hand-carried, the number each person may possess, their size, and the distance a person may move from his or her signs. These restrictions are narrowly tailored to

18

serve the government's stated interests and they leave open ample alternative channels of communication. Therefore, plaintiffs cannot demonstrate irreparable harm in this case.

### 3. Balance of Hardships

The third step in considering a request for a preliminary injunction is for the Court to balance the likelihood of harm to plaintiffs if interim relief is denied against the likelihood of harm to defendants if such relief were granted. In this case, the Court finds that the likelihood of harm to defendants exceeds the harm to plaintiffs. Plaintiffs have established that they will suffer some harm from the restrictions on their ability to protest using their desired medium, because the larger signs which plaintiffs wish to use undoubtedly attract more attention than the smaller or hand-carried signs. However, as discussed previously, "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." Heffron, 452 U.S. at 647.

The government may, in appropriate circumstances, place reasonable restrictions on the time, place, or manner of protected speech so long as the regulation is narrowly tailored to serve the government's substantial interests and ample alternative means of communication are left open. Ward, 491 U.S. at 781. In this case, defendants have met their burden of proving that Regulation Six protects substantial governmental interests. Marshal Bosley testified that, after viewing plaintiffs' signs from the back on April 24, he determined that excessively large signs placed on the sidewalks around the Supreme Court threaten the safety and security of Court personnel, visitors, demonstrators and pedestrians using the sidewalk, may impede access and the appearance of access to the Court, obstruct the view of passersby and visitors to the Court, and are inimical to the maintenance of suitable order and decorum within the grounds of the Supreme Court. See Tr 6/20/00. Prohibiting enforcement of this Regulation may interfere with the

19

Marshal's ability to perform his statutory duty to provide "adequate protection of the Supreme

Court Building and grounds and of persons and property therein" and to maintain "suitable order

and decorum within the Supreme Court Building and grounds." 40 U.S.C. § 131. Since the

Court has already determined that the Regulation is narrowly tailored to serve the government's

subtantial interests and that there exist ample alternative means of communication, the Court

finds that the balance of harms weighs against the grant of injunctive relief in this case.

### 4. Public Interest

Finally, after considering the above three factors, the Court must consider whether the

grant of injunctive relief would serve the public interest. Informed public discourse and political

debate are fundamental to our democratic system and fostering these ideals is clearly in the

public interest. Equally legitimate, however, are the public interest in the safety of Court

personnel, demonstrators, and visitors of the Court, as well as the promotion of an atmosphere of

security, accessibility, and aesthetic pleasure on the Supreme Court grounds. The public interest

is served by a compromise between the two interests and this Regulation provides such a

compromise: it allows all types of speech regardless of content and only limits the size,

composition, number and attendance of signs as necessary to serve the public's safety, security,

access, and aesthetic interests.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment will be granted and plaintiffs' motion for a preliminary injunction will be denied.  An order will accompany this opinion.

June **23**ᵈ, 2000

_____
Thomas F. Hogan
United States District Judge

21